# No. 24-13470

# In the United States Court of Appeals for the Eleventh Circuit

THE COCA-COLA CO. & SUBSIDIARIES,

*Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

ON APPEAL FROM THE UNITED STATES TAX COURT
Case No. 31183-15

**BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND NATIONAL ASSOCIATION OF MANUFACTURERS AS *AMICI CURIAE* IN SUPPORT OF APPELLANT AND REVERSAL**

Maria C. Monaghan
Mariel A. Brookins
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for* Amicus Curiae *Chamber of Commerce of the United States of America*

Erica Klenicki
Michael A. Tilghman II
NAM LEGAL CENTER
733 10th Street, NW, Suite 700
Washington, DC 20001
(202) 637-3000

*Counsel for* Amicus Curiae *the National Association of Manufacturers*

Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com

*Counsel for* Amici Curiae

## STATEMENT OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America (Chamber) states that it is a non-profit, tax-exempt organization incorporated in the District of Columbia. The Chamber has no parent corporation, and no publicly held company has 10% or greater ownership in the Chamber.

The National Association of Manufacturers (the NAM) is a national trade association representing manufacturers across the United States. The NAM does not have a parent corporation, and no publicly held company has a 10% or greater ownership interest in it.

The following individuals or entities have or may have an interest in the outcome of this case:

- Altman, John M., Counsel for Respondent-Appellee in the Tax Court
- Bailie, Huong T., Counsel for Respondent-Appellee in the Tax Court
- Bowers, Christopher, Counsel for Petitioner-Appellant in the Eleventh Circuit
- Brookins, Mariel A., Counsel for Amicus U.S. Chamber of Commerce in the Eleventh Circuit
- Campolieta, Justin L., Counsel for Respondent-Appellee in the Tax Court
- Carden, Nathaniel, Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court

- Chamber of Commerce of the United States of America, Amicus in the Eleventh Circuit

- Christensen, Jacob Earl, Counsel for Respondent-Appellee in the Eleventh Circuit

- Craig, John F., III, Counsel for Petitioner-Appellant in the Tax Court

- Desmond, Michael J., Counsel for Respondent-Appellee in the Tax Court

- Dixon, Steven R., Counsel for Petitioner-Appellant in the Tax Court

- Dvoretzky, Shay, Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court

- Fiedler, Shannon C., Counsel for Petitioner-Appellant in the Eleventh Circuit

- Fisher, Miriam L., Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court

- Flores, Elizabeth P., Counsel for Respondent-Appellee in the Tax Court

- Franklin, Barbara B., Counsel for Respondent-Appellee in the Tax Court

- Frisch, Jill A., Counsel for Respondent-Appellee in the Tax Court

- Garre, Gregory G., Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court

- Garza, Steven D., Counsel for Respondent-Appellee in the Tax Court

- Gasper, Julie Ann P., Counsel for Respondent-Appellee in the Tax Court

- Gerling-Ritters, Hans D., Counsel for Petitioner-Appellant in the Tax Court

- Gibson Dunn & Crutcher LLP, Counsel for Petitioner-Appellant in the Tax Court

- Goldberg, Lisa M., Counsel for Respondent-Appellee in the Tax Court
- Greenhouse, Robin L., Counsel for Respondent-Appellee in the Tax Court
- Hagley, Judith A., Counsel for Respondent-Appellee in the Eleventh Circuit
- Haji, Sakina, Counsel for Petitioner-Appellant in the Eleventh Circuit
- Hintermeister, Anne O'Brien, Counsel for Respondent-Appellee in the Tax Court
- Hoory, Eli, Counsel for Respondent-Appellee in the Tax Court
- Hubbert, David A., Counsel for Respondent-Appellee in the Eleventh Circuit
- Internal Revenue Service, Respondent-Appellee
- Jacinto, Jarrett Y., Counsel for Petitioner-Appellant in the Tax Court
- Kaplan Hecker & Fink LLP, Counsel for Petitioner-Appellant in the Tax Court
- Kautter, David, Respondent-Appellee (Former Acting)
- Kenworthy, Kevin L., Counsel for Petitioner-Appellant in the Tax Court
- Klenicki, Erica, Counsel for Amicus National Association of Manufacturers in the Eleventh Circuit
- Konopka, Eric J., Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court
- Koskinen, John A., Respondent-Appellee (Former)
- Krause, Melanie, Respondent-Appellee (Acting)
- Kummer, Michael D., Counsel for Petitioner-Appellant in the Tax Court
- Lampert, Heather L., Counsel for Respondent-Appellee in the Tax Court

- Latham & Watkins LLP, Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court

- Lauber, Albert G., Tax Court Judge

- Luttig, Hon. J. Michael, Counsel for Petitioner-Appellant in the Tax Court

- Magee, John B., Counsel for Petitioner-Appellant in the Tax Court

- Massey, Jonathan S., Counsel for Petitioner-Appellant in the Tax Court

- Massey & Gail LLP, Counsel for Petitioner-Appellant in the Tax Court

- Matta, Lamia R., Counsel for Petitioner-Appellant in the Tax Court

- Metcalf, Nicholas R., Counsel for Petitioner-Appellant in the Tax Court

- Mezei, Saul, Counsel for Petitioner-Appellant in the Tax Court

- Miller & Chevalier Chartered, Counsel for Petitioner-Appellant in the Tax Court

- Monaghan, Maria C., Counsel for Amicus U.S. Chamber of Commerce in the Eleventh Circuit

- Morgan, Lewis & Bockius LLP, Counsel for Petitioner-Appellant in the Tax Court

- Morrison, Sean T., Counsel for Petitioner-Appellant in the Tax Court

- National Association of Manufacturers, Amicus in the Eleventh Circuit

- O'Donnell, Douglas, Respondent-Appellee (Former Acting)

- Ortiz, Lisandra, Counsel for Petitioner-Appellant in the Tax Court

- Patterson, Kathryn F., Counsel for Respondent-Appellee in the Tax Court

- Paul, William M., Counsel for Respondent-Appellee in the Tax Court
- Rasheed, Raza, Counsel for Petitioner-Appellant in the Eleventh Circuit
- Rettig, Charles P., Respondent-Appellee (Former)
- Richards, Veronica L., Counsel for Respondent-Appellee in the Tax Court
- Rider-Longmaid, Parker, Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court
- Rollinson, Marjorie A., Counsel for Respondent-Appellee in the Eleventh Circuit and the Tax Court
- Rubin, Curt M., Counsel for Respondent-Appellee in the Tax Court
- Skadden, Arps, Slate, Meagher & Flom LLP, Counsel for Petitioner-Appellant in the Eleventh Circuit and the Tax Court
- Stafford, Blake E., Counsel for Petitioner-Appellant in the Eleventh Circuit
- Stark, Sanford W., Counsel for Petitioner-Appellant in the Tax Court
- The Coca-Cola Co., NYSE:KO, Petitioner-Appellant
- Tilghman II, Michael A., Counsel for Amicus National Association of Manufacturers in the Eleventh Circuit
- Tonuzi, Drita, Counsel for Respondent-Appellee in the Tax Court
- Tribe, Laurence H., Counsel for Petitioner-Appellant in the Tax Court
- Ugolini, Francesca, Counsel for Respondent-Appellee in the Eleventh Circuit and the Tax Court
- U.S. Commissioner of Internal Revenue, Respondent-Appellee

- U.S. Department of Justice, Tax Division, Appellate Section, Counsel for Respondent-Appellee in the Eleventh Circuit and the Tax Court

- U.S. Department of the Treasury, Respondent-Appellee

- Ussing, Carl T., Counsel for Petitioner-Appellant in the Tax Court

- Walker, Christopher J., Counsel for Amici U.S Chamber of Commerce and National Association of Manufacturers in the Eleventh Circuit

- Werfel, Daniel I., Respondent-Appellee (Former)

- Wilkins, William J., Counsel for Respondent-Appellee in the Tax Court

- Zemil, Nicholas A., Counsel for Petitioner-Appellant in the Tax Court

## TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* .................................................. 1

STATEMENT OF THE ISSUES ................................................ 4

INTRODUCTION AND SUMMARY OF ARGUMENT ........................... 4

ARGUMENT ............................................................................. 9

    I.    The IRS's Attempt to Change Retroactively Its Method for Determining the Arm's-Length Price Is Arbitrary and Capricious.......................................................... 9

    II.   Applying Traditional Administrative Law Principles, the IRS's Blocked-Income Regulation Is Arbitrary and Capricious. ......................................................... 17

    III.  The Tax Court's Approval of the IRS's Blocked-Income Regulation Violates the Supreme Court's Instructions for Reviewing Agency Action. ............................................... 24

    IV.  Predictability and Stability in the Administrative State Are Critical for Businesses and the National Economy....... 29

CONCLUSION ...................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Comm'r*, 160 T.C. 50 (2023), *appeal pending*, No. 23–3772 (8th Cir., filed Dec. 29, 2023).............................17, 18, 20, 24, 27, 28, 29, 30

*Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019).............................21

*Bidi Vapor LLC v. FDA*, 47 F.4th 1191 (11th Cir. 2022) .......................11

*Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610 (1986) ....................................31

*Chamber of Commerce v. SEC*, 85 F.4th 760 (5th Cir. 2023)................20

*Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012)...........15

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971)...19

*Cohen v. United States,* 650 F.3d 717 (D.C. Cir. 2011) (en banc).............5

*Comm'r v. First Security Bank of Utah*, 405 U.S. 394 (1972) ................28

*Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891 (2020)........................................................................ 13, 14, 19, 30, 31

*Dickinson v. Zurko*, 527 U.S. 150 (1999) .................................................5

*Encino Motorcars v. Navarro*, 579 U.S. 211 (2016) .. 11, 12, 13, 16, 18, 27

*Ethyl Corp. v. EPA*, 51 F.3d 1053 (D.C. Cir. 1995)................................23

*FCC v. Fox Television Stations*, 556 U.S. 502 (2009) ........... 11, 12, 18, 22

*FCC v. Prometheus Radio Project*, 592 U.S. 414 (2021) ........................22

*Hewitt v. Comm'r of IRS*, 21 F.4th 1336 (11th Cir. 2021) ............ 5, 19, 24

*Home Box Off. v. FCC*, 567 F.2d 9 (D.C. Cir. 1977) (per curiam)...........19

*INS v. Ventura*, 537 U.S. 12 (2002) (per curiam) ...................................26

*Marbury v. Madison*, 5 U.S. 137 (1803)................................................29

*Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44 (2011)..........................................................................................5

*Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29 (1983)..............................................10, 11, 18, 24

*Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005)..............................................................................16

*NLRB v. Bell Aerospace Co.*, 416 U.S. 267 (1974) ..................................15

*Oakbrook Land Holdings v. Comm'r*, 28 F.4th 700 (6th Cir. 2022).........5

*Perez v. Mort. Bankers Ass'n*, 575 U.S. 92 (2015) ............................12, 19

*Procter & Gamble Co. v. Comm'r*, 961 F.2d 1255 (6th Cir. 1992) ..........28

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) (*Chenery I*)...............24, 25, 26

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) (*Chenery II*) .................11, 24

*Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209 (11th Cir. 2002)...........................................................................................18

*Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735 (1996)........13, 27

*Texaco v. Comm'r*, 98 F.3d 825 (5th Cir. 1996).......................................28

*U.S. Sugar Corp. v. EPA*, 113 F.4th 984 (D.C. Cir. 2024)......................22

*United States v. Schwarzbaum*, 24 F.4th 1355 (11th Cir. 2022)............25

**Statutes**

Administrative Procedure Act, 5 U.S.C. § 706 ..................................10, 27

## Other Authorities

Christopher J. Walker & Scott T. MacGuidwin, *Interpreting the Administrative Procedure Act: A Literature Review*, 98 Notre Dame L. Rev. 1963 (2023) ........................................................................... 31

Kevin M. Stack, *The Constitutional Foundations of* Chenery, 116 Yale L.J. 952 (2007)..................................................................................... 25

Kristin E. Hickman, *Administering the Tax System We Have*, 63 Duke L.J. 1717 (2014)................................................................................... 30

Kristin E. Hickman, *The Need for* Mead*: Rejecting Tax Exceptionalism in Judicial Deference*, 90 Minn. L. Rev. 1537 (2006) .......................... 5

Paul Rose & Christopher J. Walker, *Examining the SEC's Proxy Advisor Rule* (U.S. Chamber Report, 2020) ...................................... 32

Stephanie Hoffer & Christopher J. Walker, *The Death of Tax Court Exceptionalism*, 99 Minn. L. Rev. 221 (2014)..................................... 5

## Regulations

26 C.F.R. § 1.482-1 .................................................................................. 17

## INTEREST OF *AMICI CURIAE*[*]

The Chamber of Commerce of the United States of America is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The National Association of Manufacturers (NAM) is the largest manufacturing association in the United States, representing small and large manufacturers in all 50 States and in every industrial sector. Manufacturing employs 13 million men and women in the United States, contributes $2.93 trillion to the U.S. economy annually, has the largest

---

[*] All parties consent to the filing of this brief. Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), *amici curiae* state that no counsel for any party authored this brief in whole or in part and no entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

economic impact of any major sector, and accounts for over half of all private-sector research and development in the nation. The NAM is the voice of the manufacturing community and the leading advocate for a policy agenda that helps manufacturers compete in the global economy and create jobs across the United States.

This case presents a question of significant importance to *amici* and their members: Whether the Internal Revenue Service (IRS) may evade its obligation to comply with the Administrative Procedure Act (APA) and related administrative law doctrines. Here, the IRS failed in several critical respects to engage in reasoned decisionmaking as required by the APA and the Supreme Court—including abruptly and retroactively changing its position to add about $9 billion of taxable income to Coca-Cola. Such arbitrary and capricious agency actions impose tremendous destabilizing consequences on the nation's business community, including manufacturers.

As the subject of many burdensome regulations, the business community has a particular interest in the interpretation and application of the rules governing the administrative process. Businesses critically depend on the procedures and protections that Congress provided in the

APA to ensure that regulatory actions are not the result of arbitrary or otherwise unlawful agency action. This is particularly true in the context of tax regulation. Predictability and stability in tax regulation play a key role in businesses' ability to grow, invest, and compete effectively in a global economy. For example, in the first quarter of 2024, ninety-three percent of NAM members surveyed noted that tax burdens on manufacturing activities would make it more difficult to expand their workforce, invest in new equipment, or expand facilities. NAM Manufacturers' Outlook Survey, First Quarter 2024, https://nam.org/wp-content/uploads/2024/03/Outlook-Survey-March-2024-Q1.pdf. It is essential that American businesses have clarity on the effects of their tax planning.

Given the breadth of their membership and their long history of challenging regulations that violate the APA, *amici* are uniquely positioned to speak to the administrative law principles implicated by this case as well as the consequences to the nation's business community of arbitrary regulatory activities that disrupt their operations and investment decisions. *See, e.g.*, U.S. Chamber *Amicus* Br., *Florida E. Coast Railway v. Fed. Railroad Admin.* (11th Cir., filed Aug. 2, 2024); U.S. Chamber *Amicus* Brief, *3M Co. v. Comm'r of Internal Revenue* (8th Cir.,

filed Feb. 14, 2024); NAM *Amicus* Brief, *3M Co. v. Comm'r of Internal Revenue* (8th Cir., filed Feb. 14, 2024); NAM *Amicus* Brief, *Window Covering Mfrs. Ass'n v. CSPC* (D.C. Cir., filed Feb. 7, 2023).

## STATEMENT OF THE ISSUES

Whether the IRS's section 482 transfer-pricing adjustments for Coca-Cola's 2007-2009 tax years are arbitrary, capricious, or otherwise unlawful.

Whether the IRS's blocked-income regulation is arbitrary, capricious, or otherwise unlawful.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Two developments in administrative law feature prominently in this case: the death of tax exceptionalism in federal court, and the Supreme Court's increased emphasis on predictability and stability in regulatory governance.

First, tax law historically suffered from what has been coined "tax exceptionalism"—the misperception that tax regulation is not governed by the same longstanding rules of administrative law that generally apply to federal agency rulemaking. In recent years, however, courts have correctly and uniformly rejected that approach. *See, e.g.*, *Mayo Found. for*

*Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 55 (2011) (refusing "to carve out an approach to administrative review good for tax law only" and reiterating "'the importance of maintaining a uniform approach to judicial review of administrative action'" (quoting *Dickinson v. Zurko*, 527 U.S. 150, 154 (1999))); *Cohen v. United States,* 650 F.3d 717, 736 (D.C. Cir. 2011) (en banc) (holding that the APA's judicial review provisions apply with full force to a form of IRS guidance known as a notice); *Oakbrook Land Holdings v. Comm'r*, 28 F.4th 700, 709 (6th Cir. 2022) (analyzing the procedural validity of a tax regulation under the APA), *aff'g* 154 T.C. 180 (2020).[1] This Court has followed suit and should similarly do so again here. *See, e.g.*, *Hewitt v. Comm'r of IRS*, 21 F.4th 1336, 1342–43 (11th Cir. 2021) (applying the APA's rulemaking provisions to a tax regulation).

Second, the Supreme Court in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and *Ohio v. EPA*, 144 S. Ct. 2040 (2024),

---

[1] *See also* Kristin E. Hickman, *The Need for* Mead*: Rejecting Tax Exceptionalism in Judicial Deference*, 90 Minn. L. Rev. 1537, 1541 (2006) (describing the "perception of tax exceptionalism that intrudes upon much contemporary tax scholarship and jurisprudence"); Stephanie Hoffer & Christopher J. Walker, *The Death of Tax Court Exceptionalism*, 99 Minn. L. Rev. 221, 222–24 (2014) (chronicling how federal courts have rejected tax exceptionalism).

emphasized the importance of stability in the law as it impacts regulated parties. *Loper Bright* overruled *Chevron* deference. A major problem with *Chevron* deference was the way it promoted regulatory whiplash. The Court explained that so long as the agency could find a statutory ambiguity, *Chevron* deference provided the agency with "a license . . . to change positions as much as it likes," with only the APA's prohibition on unexplained inconsistencies as a check. *Id.* at 2272. *Chevron* deference required courts to defer to agency flip-flops on the meaning of relevant statutes, so long as successive agency interpretations (no matter how contradictory) remained within an ill-defined zone of ambiguity. As the Court explained, this capacious authority "foster[ed] unwarranted instability in the law, leaving those attempting to plan around agency action in an eternal fog of uncertainty." *Id.*

Rigorous arbitrary-and-capricious review, as the Supreme Court recently applied in *Ohio v. EPA*, is also important to prevent this kind of regulatory uncertainty. When an agency abruptly changes its position, courts must ensure that the agency is doing so based on reasoned decisionmaking. An agency may of course change its policy preference, but if the agency also changes its view of critical facts or fails to account for

serious reliance interests, a more detailed justification is necessary to withstand challenge. And demanding strict adherence to that requirement is especially important when the change destabilizes the law and increases regulatory burdens on the public.

With these two principles in mind, it is easy to see why this Court should reverse the Tax Court and set aside the IRS's regulatory activities under review in this case:

**I.** In regulating Coca-Cola's transfer-pricing tax allocations, the IRS violated bedrock administrative law principles. Without fair notice or reasoned explanation, the IRS retroactively changed its longstanding method for determining the arm's-length price for some of Coca-Cola's transfer-pricing tax allocations for the 2007-2009 tax years, increasing Coca-Cola's tax liability by billions of dollars. The IRS's attempt to change the rules of the game after the fact and for only some of the transfer-pricing tax allocations must be set aside as arbitrary and capricious.

**II.** Similarly, when applying normal administrative law rules, it is not a close call that the IRS's blocked-income regulation at issue in this case violates the APA. In particular, the IRS did not provide a reasoned basis for disrupting settled law and changing its longstanding position

and did not respond to significant comments made during the comment period. Indeed, the IRS's errors here are worse than those the Supreme Court identified in *Ohio v. EPA*. This Court should declare this regulation arbitrary and capricious.

**III.**  In upholding the IRS's enforcement of the blocked-income regulation, the Tax Court compounded the IRS's errors in at least two critical respects. First, the Tax Court violated the *Chenery* doctrine by providing impermissible post hoc rationalizations to justify the IRS's regulation. Second, the Tax Court applied the since-overturned *Chevron* doctrine to defer to the IRS's interpretation of the Internal Revenue Code in the blocked-income regulation. This Court should correct both of these missteps.

**IV.**  The IRS's failure to comply with the APA and related administrative law doctrines has substantial negative consequences for the nation's business community. Arbitrary and capricious regulations unfairly interfere with businesses' operations and investments. This is particularly true in the context of tax regulation. Similarly, agencies' attempts to change settled regulatory positions after the fact undercut the predictably and stability necessary to sustain a thriving economy.

# ARGUMENT

## I. The IRS's Attempt to Change Retroactively Its Method for Determining the Arm's-Length Price Is Arbitrary and Capricious.

Perhaps in response to the death of tax exceptionalism, the IRS has made considerable strides in recent years to comply with the APA and related administrative law doctrines. Yet, the IRS continues, at times, to attempt to reap administrative law's benefits of agency discretion while avoiding its constraints, such as the APA's prohibition on arbitrary and capricious agency actions.

In adjusting Coca-Cola's transfer-pricing tax allocations, the IRS has violated bedrock administrative law principles. Without notice or explanation, the IRS changed *retroactively* its longstanding method for determining the arm's-length price for Coca-Cola's transfer-pricing allocations for the 2007-2009 tax years. The way the IRS has attempted to change the rules of the game after the fact should be deemed arbitrary and capricious in at least three independent ways: (1) the IRS changed its position without providing any good reasons; (2) the IRS retroactively imposed its changed position to impose billions of dollars of additional tax liability without fair notice; and (3) the IRS's new position applies

inconsistently to different companies without providing any reasons for that irrational, arbitrary disparate treatment.

1.    The APA commands that a reviewing court must "hold unlawful and set aside" any agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Supreme Court has explained that, to survive arbitrary-and-capricious review, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicles Mfrs. Ass'n v. State Farm Mutual Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotations marks omitted).

In what has been coined the APA's reasoned decisionmaking requirement (or "hard look" review), the *State Farm* Court provided further instruction:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: "We may not supply a reasoned basis for the agency's action that the agency itself has not given."

*Id.* (quoting *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (*Chenery II*); *accord Bidi Vapor LLC v. FDA*, 47 F.4th 1191, 1202 (11th Cir. 2022) (embracing the *State Farm* approach and explaining that the APA requires "an agency [to] consider[] all the 'relevant factors' and 'important aspect[s] of the problem'" (quoting *State Farm*, 463 U.S. at 43)).

The Supreme Court has long recognized that when an agency wants to change course and abandon a position the agency has previously embraced, the agency must "supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *State Farm*, 463 U.S. at 42. This means two things. First, the agency must "at least 'display awareness that it is changing position.'" *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quoting *FCC v. Fox Television Stations*, 556 U.S. 502, 515 (2009)). Second, the agency must also "show that there are good reasons for the new policy." *Id.* (quoting *Fox*, 556 U.S. at 515).

This standard does not always require agencies to "provide a more detailed justification than what would suffice for a new policy created on a blank slate." *Id.* (quoting *Fox*, 556 U.S. at 515). But the Supreme Court has recognized two instances when a "more substantial justification" for

a new position *is* warranted: (1) when the agency's "'new policy rests upon factual findings that contradict those which underlay its prior policy,'" and (2) when the agency's "'prior policy has engendered serious reliance interests that must be taken into account.'" *Perez v. Mort. Bankers Ass'n*, 575 U.S. 92, 106 (2015) (quoting *Fox*, 556 U.S. at 515). In these circumstances, the agency cannot merely acknowledge its change in position and explain its new stance. Rather, it must provide a meaningful account of why and how its assessment of the facts has changed—and why the benefits of the new policy outweigh the regulated public's reliance interests.

The Supreme Court has repeatedly noted the importance of certainty and predictability in regulatory law. When an agency "explain[s] its changed position," agencies must "be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Encino Motorcars*, 579 U.S. at 221–22 (quoting *Fox*, 556 U.S. at 515). Sure enough, the Court has often invalidated agency action as arbitrary when agencies disregard the reliance interests of regulated parties. In *Encino Motorcars*, for example, the Court concluded that it was arbitrary and capricious for the Department of Labor to reverse a

decades-old position that certain car-dealership employees were exempt from federal statutory overtime-payment requirements. *Id.* at 217–18, 223–24. The Court emphasized the expectations dealerships had built up over time, and how they had "structured their compensation plans against" the backdrop of the Department's prior position. *Id.* at 222–23. It held that "[i]n light of the serious reliance interests at stake, the Department's conclusory statements [about its new interpretation of the statute being reasonable] do not suffice to explain its decision." *Id.* at 224.

Even more prominently, in 2020 the Supreme Court struck down the Trump Administration's efforts to rescind the Obama Administration's DACA program, which offered removal forbearance and other benefits to undocumented immigrants who entered the United States as children. *See Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 591 U.S. 1, 9, 30 (2020). Repeating its prior admonitions, the Court noted that an agency shifting policies must account for the "legitimate reliance" of regulated parties on the status quo. *Id.* at 30 (quoting *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 742 (1996)). Specifically, the Court emphasized that undocumented childhood immigrants had ordered their lives in the United States around the DACA program's ongoing viability,

arranging everything from employment to family relationships. *Id.* at 31. The Court noted that paying lip service to reliance interests is not enough; the agency must also "determine whether [the interests] were significant, and weigh any such interests against competing policy concerns." *Id.* at 33. Because the government had not considered these reliance interests, the Court invalidated the rescission of DACA as arbitrary and capricious. *Id.* at 32-33.

Here, the IRS did not even attempt to justify its change in policy for determining the arm's-length price of Coca-Cola's transfer-pricing allocations for the 2007–2009 tax years. Instead, as detailed in Coca-Cola's opening brief (at 15–16), the IRS engaged an expert to prepare a transfer-pricing report with respect to the targeted Cola-Cola entities, and that expert relied on a different method that would increase Coca-Cola's tax liability for those years by billions of dollars. Neither in the expert report nor in the IRS's deficiency notice did the IRS provide a reasoned decision for its policy change. Nor did the IRS articulate and consider reasonable regulatory alternatives or demonstrate that the IRS had adequately considered the reliance interests at stake.

**2.** The Supreme Court's requirements for reasoned decisionmaking when an agency changes its position, discussed above, apply to both prospective and retrospective policy changes. When it comes to retrospective changes, however, the Supreme Court is particularly concerned about agency actions that would "impose potentially massive liability on [a regulated entity] for conduct that occurred well before that interpretation was announced." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155–56 (2012). Indeed, the Court has suggested that an agency should not change an interpretation in an adjudicative proceeding where doing so would impose "new liability . . . on individuals for past actions which were taken in good-faith reliance on [agency] pronouncements" or in a case involving "fines or damages." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 295 (1974). This Court should hold that such unfair retroactive policy changes are arbitrary and capricious under the APA.

Here, the IRS has attempted to change retroactively its approach for determining the arm's-length price for the 2007–2009 tax years. This change would result in *billions* of dollars of additional tax liability for Coca-Cola. As detailed in Coca-Cola's opening brief (at 24–27), the IRS's about-face is a textbook example of arbitrary-and-capricious unfair

surprise. Coca-Cola had used, with the IRS's blessing and regular audits, the prior approach since tax year 1987. The IRS concedes that it never notified Coca-Cola before the relevant tax returns were filed that the IRS would no longer accept that transfer-pricing method. Indeed, in June 2009, the IRS reaffirmed in an audit report that Coca-Cola's method "seems appropriate." It was not until September 2015 that the IRS sent Coca-Cola a deficiency notice for the 2007–2009 tax years that incorporated the IRS's new approach.

**3.** It is blackletter law that "[a]n '[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Encino Motorcars*, 579 U.S. at 222 (quoting *Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005)). As detailed in Coca-Cola's opening brief (at 30–31), the IRS's new approach does not apply to all of Coca-Cola's companies. It only applies to those companies that are in countries without double-taxation treaties with the United States. The IRS's selective adoption of its new method is wholly unexplained, and that is likely the case because the IRS is attempting to avoid scrutiny of its new approach. By not

applying it in treaty countries, the taxing authorities in those countries do not have the opportunity to challenge it.

Treating similarly situated companies differently based solely on location—without providing any basis for such differentiation—is arbitrary and capricious agency action.

## II. Applying Traditional Administrative Law Principles, the IRS's Blocked-Income Regulation Is Arbitrary and Capricious.

The Tax Court also allowed the IRS to allocate as "income" payments blocked by foreign law, relying on the so-called blocked-income regulation that purports to authorize the IRS to ignore foreign legal restrictions unless certain requirements are met. *See* 26 C.F.R. § 1.482-1(h)(2)(i), (ii). To reach that conclusion in this case, the Tax Court adhered to its splintered 7-2-8 en banc decision in *3M Co. v. Commissioner*, 160 T.C. 50 (2023), *appeal pending*, No. 23–3772 (8th Cir., filed Dec. 29, 2023), which had upheld the regulation. This decision is arbitrary and capricious under the APA for at least three reasons: (1) the IRS provided no explanation for its change in regulatory position; (2) the IRS failed to respond to significant comments raised during the comment period; and

(3) the IRS's arbitrary and capricious actions here are worse than those the Supreme Court recently addressed in *Ohio v. EPA*.

1. This case is an easy reversal under *State Farm*. As Judge Toro, joined by five of his Tax Court colleagues, explained in his *3M* dissent, "Treasury offered no explanation for its choices with respect to the rule. Not a single sentence. Treasury did not explain why a revision to the existing rule was needed." *3M*, 160 T.C. at 334 (Toro, J., dissenting). The IRS's failure to "articulate a satisfactory explanation for [agency] action," much less *any* explanation, is arbitrary and capricious under the APA. *Sierra Club v. U.S. Army Corps of Eng'rs*, 295 F.3d 1209, 1216 (11th Cir. 2002) (quoting *State Farm*, 463 U.S. at 43)).

But the IRS's error is even more egregious because the blocked-income regulation diverged from the IRS's prior approach as well as from settled judicial precedents. When an agency changes its position, Supreme Court precedent requires that "the agency must at least 'display awareness that it is changing position' and 'show that there are good reasons for the new policy.'" *Encino Motorcars*, 579 U.S. at 221 (quoting *Fox*, 556 U.S. at 515). The Court further requires the agency to consider reasonable regulatory alternatives and, as detailed in Part I, to demonstrate

that it has adequately considered the reliance interests at stake in changing the regulatory baseline. *See, e.g.*, *Regents*, 140 S. Ct. at 1911–15. As Coca-Cola explains in its opening brief (at 51–57), the IRS failed to comply with any of these reasoned-decisionmaking requirements.

    **2.** The IRS's failure to engage in reasoned decisionmaking is exacerbated by its failure to consider, much less respond to, significant comments lodged during the public comment period. It is basic administrative law that "[a]n agency must consider and respond to significant comments received during the period for public comment." *Mortgage Bankers*, 575 U.S. at 96 (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). As the D.C. Circuit has explained, this APA-guaranteed "opportunity to comment is meaningless unless the agency responds to significant points raised by the public." *Home Box Off. v. FCC*, 567 F.2d 9, 35–36 (D.C. Cir. 1977) (per curiam) (footnote omitted). Indeed, this Court has previously found an IRS regulation arbitrary and capricious for failing to respond to significant comments. *See Hewitt*, 21 F.4th at 1353 ("Because Treasury, in promulgating the extinguishment proceeds regulation, failed to respond to NYLC's significant comment concerning the post-donation improvements issue as to proceeds, it

violated the APA's procedural requirements."); *cf. Chamber of Commerce v. SEC*, 85 F.4th 760, 780 (5th Cir. 2023) ("The SEC acted arbitrarily and capriciously, in violation of the APA, when it failed to respond to petitioners' comments and failed to conduct a proper cost-benefit analysis.").

Turning to the blocked-income regulation at issue in this case, Judge Toro's *3M* dissent rightly categorizes the following as "quintessential 'significant comments'":

> four commenters pointed out that the proposed rule contradicted the Supreme Court's decision in *First Security* and the decisions of this Court and the U.S. Court of Appeals for the Sixth Circuit in *Procter & Gamble* and called for changes to the rule. The comments questioned whether, under that precedent, Treasury had the authority to promulgate Treasury Regulation § 1.482-1(h)(2) in the form that was ultimately adopted.

*3M*, 160 T.C. at 346 (Toro, J., dissenting); *see also id.* at 333–365 (Toro, J., dissenting) (further detailing why these are significant comments and how the Tax Court's plurality opinion in *3M* misapplies this APA requirement and misreads the relevant precedent).

Had the IRS responded to these significant comments, it would have had to engage in reasoned decisionmaking. It would have had to explain how the new regulation is reconcilable with existing judicial precedent and explain how and why the IRS decided to depart from its prior

approach. It would have had to consider the reliance interests engendered by the prior approach and explore reasonable alternatives. That reasoned decisionmaking would have led to a higher quality, more effective regulation—and more public confidence in the IRS's regulatory activities. As the Supreme Court has explained, notice-and-comment rulemaking "gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes" while "afford[ing] the agency a chance to avoid errors and make a more informed decision." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019).

**3.** The Supreme Court's decision in *Ohio v. EPA*, 144 S. Ct. 2040 (2024), is instructive. There, the Court addressed the EPA's rule—following separate EPA actions disapproving more than 20 states' Clean Air Act implementation plans—that imposed one federal implementation plan covering all disapproved states. *See id.* at 2049–50. During the public comment period, commenters raised concerns about the EPA's proposed rule and underlying scientific modeling because both assumed that all disapproved states would be covered by the federal plan even though that was far from certain. *See id.* at 2050–51.

Despite these public comments, the EPA issued the final rule. The only relevant change the EPA made was to add a severability provision that would enforce the rule against all remaining disapproved states in the event that some states dropped out of the rule's coverage. *See id.* at 2051. As commenters had predicted, several states obtained stays of the specific disapproval decisions that were a predicate to applying the federal plan in those states. *See id.* Critically, the Supreme Court noted, the "EPA did not address whether or why the same emissions-control measures it mandated would continue to further the [rule's] stated purpose of maximizing cost-effective air-quality improvement if fewer States remained in the plan." *Id.*

In granting a stay of the rule, the Supreme Court concluded that the challengers were likely to prevail on their arbitrary-and-capricious claim.[2] In its failure to respond to significant public comments, the EPA

---

[2] In *Ohio v. EPA*, the Court applied the "arbitrary and capricious" standard of the Clean Air Act—not that of the APA—but it treated those standards as interchangeable, citing and applying the key APA reasoned-decisionmaking precedents. *See, e.g.*, *Ohio v. EPA*, 144 S. Ct. at 2053 (citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021); *Fox*, 556 U.S. at 513; *State Farm*, 463 U.S. at 43); *see also U.S. Sugar Corp. v. EPA*, 113 F.4th 984, 991 n.7 (D.C. Cir. 2024) (noting that "judicial review under the Clean Air Act is 'essentially the same' as judicial review under

had likely failed to engage in reasoned decisionmaking by not "supply[ing] 'a satisfactory explanation for its action'" and by "ignor[ing] 'an important aspect of the problem' before it." *Id.* at 2054 (quoting *State Farm*, 463 U.S. at 43). Arbitrary-and-capricious review requires courts to "ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" *Id.* at 2053 (quoting *State Farm*, 463 U.S. at 43).

The IRS's blocked-income rule suffers from even more flaws than the rule at issue in *Ohio v. EPA*. The IRS offered no explanation for its ultimate decision, much less explained why the existing rule needed to be revised. And it did not acknowledge, much less respond to, significant comments challenging the IRS's authority to promulgate the rule. Indeed, not only did the IRS fail to respond to significant comments and thus ignored an important aspect of the problem, as the Court concluded had likely occurred in *Ohio v EPA*; the IRS's regulation also diverged from the agency's prior approach and from settled judicial precedents.

---

the APA" (quoting *Ethyl Corp. v. EPA*, 51 F.3d 1053, 1064 (D.C. Cir. 1995))).

## III. The Tax Court's Approval of the IRS's Blocked-Income Regulation Violates the Supreme Court's Instructions for Reviewing Agency Action.

In an attempt to salvage the IRS's blocked-income regulation after the fact, the Tax Court plurality in *3M* compounded the IRS's errors by upholding the tax regulation based on impermissible post hoc rationalizations and the since-overruled *Chevron* deference doctrine.

1. To uphold the IRS's blocked-income regulation, the Tax Court's plurality opinion in *3M* "is constrained to speculate and construct a rationale on the agency's behalf." *3M*, 160 T.C. at 336 (Toro, J., dissenting). Such an approach to judicial review is inappropriate. As the Supreme Court has repeatedly instructed, "[t]he reviewing court should not attempt itself to make up for [agency] deficiencies"; the court may "'not supply a reasoned basis for the agency's action that the agency itself has not given.'" *State Farm*, 463 U.S. at 43 (quoting *Chenery II*, 332 U.S. at 196). Put differently, as the Supreme Court did more than eight decades ago, "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943) (*Chenery I*); *accord Hewitt*, 21 F.4th at 1342 (explaining that "an agency's

action must be upheld, if at all, on the basis articulated by the agency itself" (quoting *State Farm*, 463 U.S. at 50)).

Complying with the *Chenery* doctrine not only incentivizes more sensible regulations but also protects courts from being forced into making the types of policy decisions reserved for Congress and, at times, administrative agencies. *See generally* Kevin M. Stack, *The Constitutional Foundations of* Chenery, 116 Yale L.J. 952 (2007). It is not the Tax Court's (or this Court's) responsibility to articulate a reasonable basis for a regulation or to choose between competing policy alternatives. *See, e.g.*, *United States v. Schwarzbaum*, 24 F.4th 1355, 1365 (11th Cir. 2022) (quoting *Chenery I*'s command, 318 U.S. at 88, that "[a]n appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency"). Courts are in the business of interpreting statutes, not defending the wisdom of an agency's policy choices. As the Supreme Court has emphasized, the *Chenery* doctrine ensures that "[t]he agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court

later determine whether its decision exceeds the leeway that the law provides." *INS v. Ventura*, 537 U.S. 12, 17 (2002) (per curiam).

The appropriate judicial response to an enforcement action predicated on a rulemaking that fails to articulate a rationale or address significant comments is to disregard the regulation and tell the agency to try again and, this time, show its work. This Court should underscore for the Tax Court the *Chenery* doctrine's foundational role in administrative law.

**2.** The Tax Court plurality in *3M* also erred by deferring to the IRS's statutory interpretation under *Chevron. See Chevron, U.S.A. v. Nat. Res. Def. Council*, 467 U.S. 837, 842–43 (1984) (instructing courts to defer to an agency's reasonable interpretation of an ambiguous statute that the agency administers). Last Term, in *Loper Bright*, the Supreme Court decisively rejected *Chevron* deference. Now, courts must "exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 144 S. Ct. at 2273.[3]

---

[3] Even if *Chevron* had not been overruled, the IRS's blocked-income regulation would have been entitled to no deference because it is procedurally invalid. On that point, *Encino Motorcars* is controlling. There, the

Analytically, moving from *Chevron* deference to *Loper Bright* "independent judgment" is an important shift in administrative law. The *Loper Bright* Court rejected *Chevron*'s "presumption that Congress, when it left ambiguity in a statute meant for implementation by an agency, . . . desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley*, 517 U.S. at 740–41 (1996). Instead, *Loper Bright* instructs reviewing courts to follow "the APA's demand that courts exercise independent judgment in construing statutes administered by agencies." *Loper Bright*, 144 S. Ct. at 2269; *see also* 5 U.S.C. § 706 ("[T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the

---

Supreme Court found that the "regulation was issued without the reasoned explanation that was required in light of the [agency's] change in position and the significant reliance interests involved." 579 U.S. at 222. Accordingly, the Court refused to defer to the agency's statutory interpretation. *Id.* at 224. "[W]here a proper challenge is raised to the agency procedures, and those procedures are defective," the Court explained, "a court should not accord *Chevron* deference to the agency interpretation." *Id.* at 221. As Judge Toro astutely observed in his *3M* dissent, "[t]he parallels to this case are easy to see." *3M*, 160 T.C. at 343 (Toro, J., dissenting). Here, like in *Encino Motorcars*, the agency changed its position in a way that conflicted with judicial precedent and past agency action, upsetting settled expectations of regulated parties. One difference, though, is that "here we have significantly less discussion (none in fact) of the reasons for the change than was present in *Encino Motorcars*." *Id.*

meaning or applicability of the terms of an agency action."). In other words, courts do what they otherwise would do in an ordinary statutory interpretation case: follow binding judicial precedent and then resolve any remaining interpretive questions by applying the traditional tools of statutory interpretation.

The Tax Court's *3M* decision cannot be squared with this funda-mental shift. The Tax Court plurality spent more than 35 pages doing the *Chevron* two-step dance. *See 3M*, 160 T.C. at 254–289. In the first 25 pages of *Chevron* analysis, the Tax Court strained to reject every case cited and argument made by petitioner because none establish that the statutory text is "unambiguous" at *Chevron* step one. *Id.* at 278; *see id.* at 254–278 (full *Chevron* step one discussion). In so doing, the Tax Court allowed the IRS to depart from the Supreme Court's decision in *First Se-curity* and to embrace an agency statutory interpretation at odds with the statutory interpretation embraced by two federal courts of appeals. *See* Coca-Cola Op. Br. 51–57 (discussing *Comm'r v. First Security Bank of Utah*, 405 U.S. 394 (1972); *Texaco v. Comm'r*, 98 F.3d 825 (5th Cir. 1996); *Procter & Gamble Co. v. Comm'r*, 961 F.2d 1255 (6th Cir. 1992)). In the following 10 pages, the Tax Court then deferred to the IRS's

interpretation as merely "reasonable" at *Chevron* step two. *See id.* at 279–289. Nowhere does the Tax Court plurality in *3M* conclude that the IRS's interpretation is the best interpretation of the statute, as *Loper Bright* now requires.

Although *Chevron* deference might have been the law of the land when the Tax Court issued its decision, that is no longer so today. In overruling *Chevron*, the *Loper Bright* Court declared that such deference is inconsistent with the APA and is "an impediment, rather than an aid, to accomplishing the basic judicial task of 'say[ing] what the law is.'" *Loper Bright*, 144 S. Ct. at 2263–64, 2271 (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). The decision under review, which relies on *3M*, cannot stand because the Tax Court in *3M* never exercised its independent judgment to declare the best interpretation of the statute.

## IV. Predictability and Stability in the Administrative State Are Critical for Businesses and the National Economy.

Enforcing the stability-enhancing requirements of administrative law—values reinforced by the Supreme Court last Term in *Loper Bright* and *Ohio v. EPA*—is essential to upholding the rule of law and protecting the rights of American businesses. The IRS's arbitrary and capricious

actions have real-world, substantial impacts on the business community and thus the national economy. Businesses depend on clear, predictable rules—and fair and nonarbitrary administrative processes—when planning their operations and investing for their businesses. This is particularly true of tax regulations, especially as the IRS's activities have evolved beyond revenue raising to regulate various sectors of the economy in substantial ways. *See generally* Kristin E. Hickman, *Administering the Tax System We Have*, 63 Duke L.J. 1717 (2014). An agency's refusal to be constrained by administrative law's procedural protections imposes great costs and uncertainties on the individuals, businesses, and industries regulated by those laws.

As Judge Toro observed in his *3M* dissent, "requiring agencies to comply with the APA's procedural requirements is not a pointless exercise." *3M*, 160 T.C. 50, 367 (Toro, J., dissenting). These requirements "'serve[] important values of administrative law.'" *Id.* (quoting *Regents*, 140 S. Ct. at 1909). "Requiring a new decision before considering new reasons promotes 'agency accountability,'" the Supreme Court has explained, "by ensuring that parties and the public can respond fully and in a timely manner to an agency's exercise of authority." *Regents*, 140 S.

Ct. at 1909 (quoting *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 643 (1986)). It also "instills confidence" in administrative governance for the regulated and the public more generally. *Id.*

Perhaps most importantly, the APA's procedural requirements are vital to producing higher quality federal regulations. It is not difficult to appreciate how notice-and-comment rulemaking serves this purpose. After all, the APA requires that the agency release its proposed rule and supporting evidence and information to the public so industry and other experts have the opportunity to comment on it, allowing the agency to leverage expertise outside the agency to make the final rule better. And in promulgating the final rule, the agency is required to consider the significant public comments, revise the rule to address them where appropriate, and otherwise engage in reasoned decisionmaking. *See, e.g.*, Christopher J. Walker & Scott T. MacGuidwin, *Interpreting the Administrative Procedure Act: A Literature Review*, 98 Notre Dame L. Rev. 1963, 1967–71 (2023) (detailing how the Supreme Court and lower courts have interpreted the requirements of APA notice-and-comment rulemaking).

Over the decades, *amici* and their members have experienced firsthand the critical importance of these APA requirements in

implementing new regulations. The Chamber has also commissioned numerous reports and studies that explore how notice-and-comment rulemaking leads to higher quality regulations. *See, e.g.*, Paul Rose & Christopher J. Walker, *Examining the SEC's Proxy Advisor Rule* (U.S. Chamber Report, 2020), https://ssrn.com/abstract=3728163. When agencies fully engage in notice-and-comment rulemaking and reasoned decisionmaking, agencies are more likely to carefully tailor their regulatory efforts to maximize benefits, minimize costs, and take into account unintended consequences and reliance interests.

## CONCLUSION

For these reasons, the Tax Court's decision should be reversed.

Respectfully submitted,

March 18, 2025

Maria C. Monaghan
Mariel A. Brookins
U.S. CHAMBER
LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for* Amicus Curiae
*Chamber of Commerce of the*
*United States of America*

Erica Klenicki
Michael A. Tilghman II
NAM LEGAL CENTER
733 10th Street, NW
Suite 700
Washington, DC 20001
(202) 637-3000

*Counsel for* Amicus Curiae *the*
*National Association of Manufac-*
*turers*

/s/ Christopher J. Walker
Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com
  *\* Institutional affiliation is provided*
  *for identification purposes only. Pro-*
  *fessor Walker is Of Counsel and*
  *Consultant at the U.S. Chamber Lit-*
  *igation Center*

  *Counsel for* Amici Curiae

# CERTIFICATE OF COMPLIANCE

I certify that the foregoing brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7) because it contains 6,443 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

I further certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

March 18, 2025

/s/ Christopher J. Walker
Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 18, 2025, the foregoing brief was electronically filed with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. All parties were served through the Court's CM/ECF system.

March 18, 2025

/s/ Christopher J. Walker
Christopher J. Walker
  *Counsel of Record*
UNIVERSITY OF MICHIGAN
SCHOOL OF LAW
701 South State Street
Ann Arbor, MI 48109-3091
(734) 763-3812
christopher.j.walker@gmail.com